# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MARY WALKER, )
　)
　　　Plaintiff, )
　)
　　v. ) 2: 09-cv-00336
　)
DEPARTMENT OF REVENUE, )
　)
　　　Defendant. )

## MEMORANDUM OPINION AND ORDER

October 1, 2010

Presently before the Court for disposition is the MOTION FOR SUMMARY JUDGMENT, with brief in support, filed by Defendant, Department of Revenue (Document Nos. 25 and 26, respectively), and the brief and response in opposition filed by Plaintiff, Mary Walker (Document Nos. 36 and 37, respectively).

The issues have been fully briefed and the factual record has been thoroughly developed via the Concise Statement of Material Facts filed by Defendant (Document No. 27) and the counter Concise Statement of Material Facts filed by Plaintiff (Document No. 38).

After careful consideration of the motion, the filings in support and opposition thereto, the memoranda of the parties, the relevant case law, and the record as a whole, the motion for summary judgment filed by Defendant, Department of Revenue, will be granted in its entirety.

### Procedural History

Plaintiff, Mary Walker, initiated this lawsuit on March 18, 2009, by the filing of a Complaint against Defendant, Department of Revenue ("DOR"), in which she alleges that she was subjected to a continuous and ongoing hostile work environment and disparate treatment because of her sex, age, race/reverse race, diverse family, and disability/perceived disability,

1

harassment, discrimination, and retaliation in violation of Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act ("ADA"), the Age Discrimination Employment Act ("ADEA"), and the Pennsylvania Human Relations Act ("PHRA").

Defendant filed the instant motion for summary judgment, in which it contends that Plaintiff is not able to establish a prima facie case on her Title VII claims. Additionally, Defendant argues that Plaintiff's discrimination claims brought under the ADA and the ADEA are barred by the Eleventh Amendment to the United States Constitution and that Plaintiff's discrimination claims brought under the PHRA are barred by the doctrine of sovereign immunity. Plaintiff has filed her response and brief in opposition to the motion for summary judgment and concedes that her ADA, ADEA, and PHRA claims are barred. Accordingly, the Court will address only Plaintiff's federal claims brought under Title VII.

## **Factual Background**

The facts relevant to this discussion, and viewed in the light most favorable to Plaintiff, are as follows. Plaintiff, a Caucasian female, was employed by DOR as a seasonal employee during the 2007 tax season, which ran from approximately February 6, 2007, through mid-May, 2007. DOR did not rehire Plaintiff for the 2008 tax season.

Plaintiff alleges that during her three-month period of employment with DOR, she was subjected to a hostile work environment, discriminated against, and retaliated against based upon her membership in numerous protected classes. Specifically, Plaintiff alleges that her rights pursuant to Title VII, the ADA, the ADEA, and the PHRA were violated based upon her race and reverse race, her age, her gender, her disability, and her perceived disability.

Because Plaintiff concedes that her ADA, ADEA, and PHRA claims are barred, the following factual background primarily will focus on Plaintiff's claims under Title VII.

2

Plaintiff appears to allege that she was discriminated against based upon her race (white) and based upon the fact that she has a "bi-racial family." *See* Complaint at ¶¶ 8, 12. Plaintiff also alleges that she was discriminated against based upon her gender (female). Complaint at ¶ 8.[1]

In April of 2007, Plaintiff applied for a permanent position as a Tax Account Collection Technician ("TACT"). Plaintiff was not hired for the TACT position and alleges that an unidentified male was hired instead of her. Plaintiff does not allege, however, that the male was less qualified for the position than she was nor does she indicate the race of this unnamed male person.

Plaintiff also alleges that although she received an "excellent" performance evaluation from her supervisor, George Dudek ("Dudek"), and although Dudek indicated on the performance evaluation that he would re-hire her for another season, her employment was not renewed for the 2008 year. Plaintiff does not allege that this failure to renew her seasonal employment was based upon her membership in any protected class, including those covered by Title VII.

Finally, Plaintiff alleges that she was retaliated against for complaints she made about the hostile work environment and disparate treatment she was allegedly experiencing. *See* Complaint at ¶ 12(j). Plaintiff does not allege what "complaints" she made, what the allegedly retaliatory acts were, or what person committed the allegedly retaliatory act(s).

---

[1] Plaintiff also alleges she was discriminated against and harassed because of her alleged disability and/or perceived disability (specifically, a request, which was granted, that she be permitted to wear athletic shoes) and the fact that she spoke loudly due to an alleged hearing problem. Plaintiff does not allege that comments were ever made to her regarding her race, her family's race, and/or her gender. Therefore, the Court finds that Plaintiff's hostile work environment claims involving discrimination and harassment about wearing athletic shoes and/or speaking loudly are actually part of her ADA claims, not her Title VII claims.

Plaintiff filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission, which was cross-filed with the Pennsylvania Human Relations Commission. Plaintiff received a "Right to Sue" letter and, thereafter, timely filed this lawsuit. Plaintiff seeks injunctive relief, declaratory judgment, compensatory damages, punitive damages, nominal damages, court costs, and attorney's fees.

## **Standard of Review**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (*quoting* Fed.R.Civ.P. 56(c)). There is no issue for trial "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The court is not to weigh the evidence, or make credibility decisions about the evidence. *Josey v. John R. Hollingsworth Corp.*, 996 F.2d 632, 637 (3d Cir. 1993). "A defendant moving for summary judgment bears the initial burden of demonstrating there are no facts supporting the plaintiff's claim; then the plaintiff must introduce specific, affirmative evidence there is a genuine issue for trial." *Holt Cargo Sys., Inc. v. Del. River Port Auth.*, 20 F. Supp.2d 803, 817 (E.D. Pa. 1998), *aff'd,* 165 F.3d 242 (3d Cir. 1999)).

Additionally, as the moving party, the defendant, is not required to refute the essential elements of the plaintiff's cause of action. Rather, the defendant need only demonstrate "the absence or insufficiency of the plaintiff's evidence offered in support of those essential elements. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Further, the non-moving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to

survive a summary judgment motion. Distilled to its essence, the summary judgment standard requires the non-moving party to create a "sufficient disagreement to require submission [of the evidence] to a jury." *Liberty Lobby*, 477 U.S. at 251-52.

## Discussion

I.  **Title VII Claims**

Title VII makes it unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e-2(a)(1). Thus, a court's ultimate task in a discrimination case is to determine whether the plaintiff has carried his or her burden of showing, by a preponderance of the evidence, that the employer intentionally discriminated against him or her. *Josey v. John R. Hollingsworth Corp.*, 996 F.2d 632, 637 (3d Cir. 1993); *see Bellissimo v. Westinghouse Elec. Corp.*, 764 F.2d 175, 179 (3d Cir. 1985) ("[A] plaintiff must show that his status as a minority class was the but for reason for the treatment accorded."), *cert. denied*, 475 U.S. 1035 (1986).

In a Title VII lawsuit, the familiar *McDonnell Douglas*[2] formulation regarding the appropriate burdens of proof and allocation of production of evidence govern and guide the analysis of the evidence presented on a motion for summary judgment. Accordingly, the plaintiff bears the initial burden of presenting a prima facie case by demonstrating that (1) she is a member of a protected class; (2) she was qualified for the job; (3) she suffered an adverse employment decision; and (4) others not in the protected class were treated more favorably. *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994) (*citing McDonnell Douglas*, 411 U.S. at 802). Should the plaintiff make this showing, a presumption of discrimination is created and the

---

[2] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

5

burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for its decision. *Fuentes*, 32 F.3d at 763; *Weldon v. Kraft, Inc.*, 896 F.2d 793, 797 (3d Cir. 1990).

The employer need only produce sufficient evidence to enable a factfinder to conclude that the action taken was motivated by a nondiscriminatory purpose. *Fuentes,* 32 F.3d at 763. If the defendant is able to clear this relatively low hurdle, the presumption evaporates and the onus is again on the plaintiff, who bears the ultimate burden of showing that a discriminatory purpose was a determinative factor in the decision. *Id.* at 764; *Bellissimo,* 764 F.2d at 179-80. The plaintiff can either prove this directly, by showing that discriminatory considerations motivated the defendant's actions, or indirectly, by showing that the rationale provided by the defendant is unworthy of credence. *Josey*, 996 F.2d at 638; *Weldon,* 896 F.2d at 797.

At trial, a Title VII plaintiff must prove both that the employer's reason was false and that discrimination was the real reason for the discharge. *Fuentes*, 32 F.3d at 763. However, the Court of Appeals for the Third Circuit has held that the plaintiff's burden is not as onerous when attempting to survive a summary judgment motion. In such situations, the plaintiff need only demonstrate that there are disputed factual issues concerning either (1) whether the proffered reason for the discharge is false, or (2) whether an invidious discriminatory reason was more likely than not a motivating or determinative cause for the discharge. *Torre v. Casio, Inc.,* 42 F.3d 825, 830 (3d Cir. 1994); *Fuentes,* 32 F.3d at 764.

    a.    **Hostile Work Environment**

To establish a prima facie case of discrimination under Title VII based on a hostile work environment, a plaintiff must establish the following, by a preponderance of the evidence: 1) he or she suffered intentional discrimination on the basis of membership in a protected group; 2) the discrimination was pervasive and regular; 3) the discrimination detrimentally affected the

plaintiff; 4) the discrimination would detrimentally affect a reasonable person of the same race, gender, religion, or national origin in the same position; and 5) the existence of respondeat superior liability. *Andreoli v, Gates*, 482 F.3d 641, 643 (3d Cir. 2007). Courts must consider "the totality of the circumstances" in analyzing a hostile work environment claim. *Andrews*, 895 F.2d at 1484. Such circumstances include the "frequency of the allegedly discriminatory conduct, its severity, whether it is physically threatening or humiliating, and whether it unreasonably interferes with an employee's work performance." *Shramban v. Aetna,*, 2004 WL 4184841 at *23 (3d Cir. 2004) (*citing Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)).

To satisfy the required elements of a hostile work environment claim, a plaintiff must prove that he or she was subjected to conduct that was so objectively offensive as to "alter the 'conditions of her employment and create an abusive working environment.'" *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986) (citations omitted)). A plaintiff cannot rely upon casual, isolated, or sporadic incidents to support a claim of a hostile work environment. *Andrews*, 895 F.2d at 1482. Therefore, "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Brooks v. CBS Radio,* 2008 WL 5262988 (3d Cir. 2008). *See Harris v. SmithKline Beecham*, 27 F. Supp.2d 569, 578 (E.D. Pa. 1998) (to prevail on a hostile work environment claim, a plaintiff must generally show that he or she was subjected to "repeated, if not persistent, acts of harassment"). *See also Drinkwater v. Union Carbide Corp.*, 904 F.2d 853, 863 (3d Cir. 1990) (hostile work environment claims must "demonstrate a continuous period of harassment, and two comments do not create an atmosphere").

Plaintiff alleges that while employed at DOR, she was subjected to a continuous and ongoing hostile work environment. Defendant responds that it is entitled to summary judgment

7

because Plaintiff has failed to clarify her hostile work environment claims. For example, although Plaintiff testified in her deposition that she "was subjected to just rude behavior, just a real sense of just --- I mean literally hatred. I mean these people were very ugly" (Depo of Pl at 24), she was unable to name a single co-worker or supervisor who had engaged in such rude behavior. Plaintiff describes this "rude behavior" as receiving nasty looks or glares. When asked to identify the specific coworkers that behaved rudely and hatefully towards her, Plaintiff responded, "To be honest with you, I don't know their names. I knew nothing about them."

Significantly, Plaintiff does not contend that any of the alleged rude behavior was motivated by her gender and she admits that no one ever made a racially insensitive remark to her.

Defendant further contends that Plaintiff cannot make out a prima facie case of hostile work environment discrimination because the alleged harassment was neither severe nor pervasive. The Court agrees. Title VII does not create a general civility code and is only violated where the workplace is permeated with "discriminatory intimidation, ridicule, and insult" that is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Meritor Savings*, 477 U.S. at 67. The relevant circumstances include the frequency and severity of the conduct, whether it is physically threatening or humiliating as opposed to a mere offensive utterance, and whether it unreasonably interferes with the victim's work performance. *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88 (1998). Moreover, such behavior must be "sufficiently severe to alter the terms, conditions or privileges of [the plaintiff's] employment." *Cobetto v. Wyeth Pharmaceuticals*, 619 F. Supp.2d 142, 168 (W.D. Pa. 2007) (*citing Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57 (1986)).

The Court finds and rules that the evidentiary record in this case falls far short of the applicable standard. First, the Court is not able to determine the frequency of the alleged discriminatory conduct. Furthermore, while the rude behavior, including nasty looks and glares, may have been unwelcome, it was certainly not physically threatening or humiliating. No physical contact or interference with work performance was involved. Isolated incidents, teasing and offhand comments may be offensive but they do not constitute actionable harassment because of Plaintiff's sex or race. *Faragher*, 524 U.S. at 788. Accordingly, Defendant is entitled to summary judgment on Plaintiff's hostile work environment and harassment claims.

### b. Disparate Treatment

Plaintiff asserts that on two separate occasions she was discriminated against because of her race and/or gender: (i) when she was not selected for the TACT position and (ii) when DOR did not renew her seasonal employment for the 2008 tax season.

To establish a prima facie case for disparate treatment under Title VII, a plaintiff must show that: 1) he or she is a member of a protected class; 2) he or she was qualified for the position; 3) he or she was discharged from or denied the position, or suffered adverse employment consequences; and 4) that non-members of the protected class were treated more favorably. *Harris*, 27 F. Supp.2d at 578.

Defendant asserts that Plaintiff has failed to establish a prima facie case of discrimination based on disparate treatment. The Court agrees.

In her Complaint, Plaintiff summarily states that "[i]n April 2007, Plaintiff applied for a TACT job, but was not hired." When questioned about this during her deposition, Plaintiff could do little to elaborate upon her claims in the Complaint. She testified that she was not interviewed

9

for the position and she did not contend that she was more qualified than the individual who was selected. She speculated at that time that the individual who was hired for the TACT position was a male named Gary Cooper. Notably, she did not give any indication as to why she felt the selection of a male for the TACT position was based upon gender and/or race.

Similarly, Plaintiff's allegations with regard to DOR's failure to renew her seasonal employment are equally vague and ambiguous. It is not contested that Plaintiff received an "excellent" employee performance review from her supervisor at the end of the 2007 season, and that, in that review, her supervisor indicated that he would re-hire Plaintiff. In her Complaint, Plaintiff states that her position was not filled. *See* Complaint at ¶ 12(ff) ("Defendant is short staffed and Plaintiff's position was not filled. . . ." Nowhere in the Complaint does Plaintiff allege that DOR's failure to renew her employment for the 2008 season was based on race or gender.

During her deposition, Plaintiff speculated that her position was eventually filled, but she again did not allege that the position was filled with a person of a different race or gender, nor did she allege that the person was less qualified for the position than she.

After a review of the summary judgment record, the Court finds that Plaintiff attempts to support her claims by unsupported assertions, conclusory allegations, and mere suspicions which are not sufficient to establish a prima facie case of discrimination. Accordingly, Defendant is entitled to summary judgment on Plaintiff's disparate impact claims.

### c. Retaliation

Title VII provides, in pertinent part, as follows:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an

unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a). To establish a prima facie case of Title VII retaliation, a plaintiff must show that (1) he or she engaged in a protected activity; (2) he or she was discharged after or contemporaneous with the activity; and (3) a causal link existed between the protected activity and threats to sue, and the loss of his or her job. *Moore v. City of Philadelphia*, 461 F.3d 331 (3d Cir. 2006).

It is not necessary for a plaintiff to prove the merits of an underlying discrimination complaint in order to invoke the anti-retaliation protection of Title VII. *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1085 (3d Cir. 1996). A plaintiff need only have a "good faith, reasonable belief that a violation existed." *Id*. Thus, even though the Court has found that Plaintiff does not have a valid claim under Title VII for hostile work environment or disparate treatment, she could still prevail on her Title VII retaliation claim.[3] Retaliation claims follow the familiar *McDonnell-Douglas* burden-shifting approach.

Defendant contends that Plaintiff cannot establish a retaliation claim as she cannot establish the first and third elements of her prima facie claim. To satisfy the first element of her claim, Plaintiff must establish that she engaged in protected activity. In *Moore v. City of Philadelphia,* 461 F.3d 331, 341 (3d Cir. 2006), the Court of Appeals for the Third Circuit explained:

> Whether the employee opposes, or participates in a proceeding against, the employer's activity, the employee must hold an objectively reasonable belief, in

---

[3] Plaintiff's alleged protected activity is not described in the Complaint; rather she simply avers that she was subjected to "retaliation for complaining regarding the ongoing hostile work environment, disparate treatment, harassment, and discrimination," that Defendants subjected her to "retaliation for protected acts," and that she "begain (sic) being retaliated against for her complaints." Complaint at ¶¶ 12(b), (c), (j).

11

good faith, that the activity they oppose is unlawful under Title VII. *Clark County v. Breeden,* 532 U.S. 268, 271, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001) (per curiam) (rejecting retaliation claim where "[n]o reasonable person could have believed that" the underlying incident complained about "violated Title VII's standard" for unlawful discrimination).

In *Wilkerson v. New Media Technology Charter School, Inc*., 522 F.3d 315, 322 (3d Cir. 2008), our appellate court stated: "To put it differently, if no reasonable person could have believed that the underlying incident complained about constituted unlawful discrimination, then the complaint is not protected."

Defendant asserts that although Plaintiff states generally that she engaged in "protected activity," she does not provide any evidence of her specific complaints regarding alleged violations of Title VII. In fact, the vast majority, if not all, of Plaintiff's complaints appear to involve her perceived discrimination and harassing comments made by her co-workers over her being granted permission to wear tennis shoes to work, which conduct goes directly to her ADA claims, not her Title VII claims. The summary judgment record is devoid of any evidence that Plaintiff complained about any incidents in which she was harassed or discriminated against based on acts made unlawful by Title VII.[4]

For these reasons, the Court finds that Plaintiff has failed to meet the first element of her prima facie claim for retaliation as the record is devoid of any evidence that Plaintiff engaged in protected activity.

However, assuming *arguendo* that Plaintiff's complaints are protected activity under Title VII, the Court finds that Plaintiff has failed to provide any evidence to establish a causal

---

[4] In fact, as discussed *supra,* Plaintiff does not contend that any of the alleged rude behavior she experienced was motivated by her gender and she admits that no one ever made a racially insensitive remark to her. Undeniably, Plaintiff filed a Charge of Discrimination with the EEOC, but again, that document is devoid of any allegations that any retaliatory actions taken by DOR were motivated by her gender and/or race.

connection between her "protected activity" and any alleged adverse action taken against her by DOR. The Complaint filed by Plaintiff is vague and non-specific as to the adverse actions she believes were taken by DOR in retaliation for her complaints. However, the EEOC Charge of Discrimination filed by Plaintiff provides some insight, *to wit*:[5] (i) she "was retaliated against by management nitpicking my work. . . . Every day they changed the procedures as to how I handled documents;" (ii) she "applied for a TACT job in April 2007 but did not get the job. I never even got an interview;" and (iii) her seasonal employment was not renewed for the 2008 tax season. *See* Exhibit 6 (Document No. 25-2).

"The requisite causal connection may be established by showing a close temporal proximity between the protected activity and the alleged retaliatory conduct, or by submitting "circumstantial evidence . . . that give[s] rise to an inference of causation." *Marra v. Philadelphia Hous. Auth.*, 497 F.3d 286, 302 (3d Cir. 2007). The Court of Appeals for the Third Circuit has held that "[w]here the temporal proximity between the protected activity and the adverse action is 'unusually suggestive,' it is sufficient standing alone to create an inference of causality." *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 232 (3d Cir. 2007) (*citing Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-274 (2001) (temporal proximity alone, when "very close," can in some instances establish a prima facie case of retaliation)); *Jalil v. Avdel Corp.,* 873 F.2d 701, 708 (3d Cir. 1989) (reversing summary judgment in favor of the defendant where the plaintiff had been discharged two days after his employer's receipt of his EEOC claim)).

---

[5] The Court notes that the majority of EEOC Charge contains allegations which do not even pertain to DOR; rather it recalls information regarding Plaintiff's employment with the Department of Public Welfare, the Department of Labor and Industry, and Butler County, Pennsylvania, none of which are parties to this lawsuit.

However, the "mere passage of time is not legally conclusive proof against retaliation." *Woodson,* 109 F.3d at 920. When the temporal proximity is not "unusually suggestive," the court asks whether "the proffered evidence, looked at as a whole, may suffice to raise the inference." *LeBoon*, 503 F.3d at 232. Although there is "no bright line rule as to what constitutes unduly suggestive temporal proximity, a gap of three months between the protected activity and the adverse action, without more, cannot create an inference of causation." *Id.* at 233. *See Andreoli v. Gates*, 482 F.3d 641, 650 (3d Cir. 2007).

As to allegations that DOR changed her work instructions, the Court finds that such actions simply do not rise to the level of an adverse action for purposes of a retaliation claim. "[A] general complaint of unfair treatment does not translate into a charge of illegal discrimination, and is not protected conduct under Title VII." *Gharzouzi v. Northwestern Human Services of Penn.*, 225 F. Supp.2d 514, 540 (E.D. Pa. 2002) (*citing Barber v. CSX Distrib. Servs.*, 68 F.3d 694, 701-02 (3d Cir. 1995)). Clearly, management has the right and the obligation to ensure that work is done properly and in accordance with DOR rules. The Court does not find that the changes in Plaintiff's work instructions were so severe as to be considered an adverse action.

As to the allegations that Plaintiff did not get the TACT position and/or that her seasonal employment was not renewed for the 2008 tax season, the Court finds that the summary judgment record is utterly devoid of any evidence which demonstrates that Plaintiff's race and/or gender was a factor in either of these decisions. Rather Plaintiff relies upon her own "unsupported assertions, conclusory allegations, or mere suspicions." The Court finds and rules that Plaintiff has simply failed to present any evidence to show that race and/or gender was a

factor in DOR's decisions not to hire her for the TACT position and in not renewing Plaintiff's seasonal employment for the 2008 tax season.

Finally, the Court finds and rules that the filing of Plaintiff's EEOC charge did not affect any employment decision that was made during Plaintiff's 2007 employment with DOR. The summary judgment evidence reflects that Plaintiff's last day of employment with DOR was May 18, 2007. Approximately seven (7) months later, on December 7, 2007, Plaintiff was notified that her seasonal employment had not been renewed for 2008. Thereafter, on February 6, 2008, Plaintiff filed her EEOC / PHRC charge of discrimination, approximately two (2) months after she had been informed that her seasonal employment would not be renewed. The Court finds and rules that it is beyond dispute that anything that did or did not happen to Plaintiff during her 2007 DOR employment simply could not have been motivated by the filing of her EEOC / PHRA charge of discrimination.

In addition, Defendant has articulated a non-discriminatory and non-retaliatory reason for the non-renewal of Plaintiff's employment (Plaintiff was a temporary seasonal employee and, as such, did not have any right to have her seasonal employment automatically renewed from year to year). Therefore, to avoid summary judgment, Plaintiff must adduce evidence sufficient to prove that retaliation was the real reason that Defendant did not renew her employment. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 148 (2000); *see also Billet v. CIGNA Corp.*, 940 F.2d 812, 816 (3d Cir. 1991) ( "Merely reciting that [discrimination or retaliation] was the reason for the decision does not make it so.") The Court finds that Plaintiff has failed to meet this burden.

As Defendant notes, the summary judgment record reflects that the determination of eligible individuals for seasonal employment positions is not made by DOR. Rather, these

decisions are made by the Bureau of State Employment ("BSE") in Harrisburg, Pennsylvania. In this case, the BSE did not return Plaintiff's name on the list of individuals eligible to be rehired for the 2008 season.

After a careful review of the summary judgment evidentiary record, the Court finds and rules that Plaintiff has not contradicted or otherwise controverted Defendant's articulated reasons for Plaintiff's temporary seasonal employment not being renewed.

For all the foregoing reasons, the Court finds that Defendant is entitled to summary judgment on Plaintiff's Title VII retaliation claims.

**II. ADA and ADEA claims**

Defendant seeks summary judgment on Plaintiff's claims brought pursuant to the ADA and ADEA on the ground that the Eleventh Amendment of the United States Constitution bars same. The Eleventh Amendment provides, in relevant part as follows:,

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

It is well established that absent consent by a state, the Eleventh Amendment bars a civil rights suit in federal court that names the state as a defendant. *Edelman v. Jordan*, 415 U.S. 651, 663 (1974). Further, the Eleventh Amendment bars suits against alter-ego state agencies in federal court, regardless of the type of relief sought. *See Hans v. Louisiana*, 134 U.S. 1 (1980); *Kentucky v. Graham*, 473 U.S. 159 (1985). It is not disputed that the Department of Revenue is an alter-ego agency of the state.

The Plaintiff does not contest that Defendant is entitled to immunity under the Eleventh Amendment. Accordingly, summary judgment will be granted to Defendant on Plaintiff's claims brought pursuant to the ADA and ADEA [6]

**III.     PHRA claims**

By statute in Pennsylvania, "the Commonwealth, and its officials and employees acting within the scope of their duties, shall . . . enjoy sovereign and official immunity . . . except as the General Assembly shall specifically waive the immunity." 1 Pa.C.S.A. § 2310; s*ee also Shoop v. Dauphin County*, 766 F. Supp. 1327, 1333-34 (M.D. Pa.), *aff'd,* 945 F. Supp. 396 (3d Cir. 1991), *cert. denied*, 502 U.S. 1097 (1992).

In *Shoop*, the court noted that the General Assembly has specifically enumerated nine (9) exclusive exceptions to the general grant of immunity described above. These exceptions are for damages caused by "negligent acts involving: 1) the operation of a motor vehicle in the control or possession of a Commonwealth party; 2) health care employees; 3) care, custody or control of personal property; 4) Commonwealth-owned property; 5) potholes or other dangerous conditions; 6) care, custody or control of animals; 7) liquor store sales; 8) National Guard activities; and 9) toxoids and vaccines. 42 Pa. Cons. Stat. Ann. § 8522." *Shoop,* 766 F. Supp. at 1334. None of these exceptions apply in the instant case.

Plaintiff concedes that her PHRA claims are barred by the doctrine of sovereign immunity. Accordingly, summary judgment will be granted to Defendant on Plaintiff's claims brought pursuant to the PHRA.

---

[6] The Court notes that while the Eleventh Amendment would have permitted Plaintiff to proceed with her ADA claims insofar as she sought <u>prospective</u> injunctive relief against a state official, no such official, nor any individual defendant, has been named in this action.

**<u>Conclusion</u>**

For the reasons discussed *supra*, the Court finds that Defendant is entitled to summary judgment on Plaintiff's Title VII claims because she has not produced adequate evidence from which a reasonable factfinder could conclude that Plaintiff was discriminated against because of her gender and/or race. Further, summary judgment will be granted on Plaintiff's claims brought under the ADA, ADEA and PHRA as same are barred.

The Motion for Summary Judgment filed by Defendant, therefore, will be granted in its entirety.

An appropriate Order follows.

McVerry, J.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARY WALKER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2: 09-cv-00336 |
| | ) | |
| DEPARTMENT OF REVENUE, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER OF COURT

**AND NOW**, this 1st day of October, 2010, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED, ADJUDGED, AND DECREED** that the Motion for Summary Judgment filed by Defendant is **GRANTED** and judgment is hereby entered in favor of Defendant, Department of Revenue, and against Plaintiff, Mary Walker.

The clerk shall docket this case closed.


BY THE COURT:

s/Terrence F. McVerry
United States District Court Judge


cc:    Jeffrey T. Morris, Esquire
Morris, Jobe & Cook, LLC
Email: jmorris@thecooklawgroup.com

John Lucas, Esquire
Morris, Jobe & Cook, LLC
Email: jlucas@morrisjobeandcook.com

Mary Lynch Friedline,
Office of Attorney General
Email: mfriedline@attorneygeneral.gov